# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

v.

ROLAND J. FLATH (dob:X/X/1939).

**CRIMINAL COMPLAINT**

CASE NUMBER: 10-M-549

I, Brandon W. Bielke, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief: In the State and Eastern District of Wisconsin, and elsewhere, **ROLAND J. FLATH,** the defendant herein, engaged in the following conduct:

**Count One:** Between on or about July 2006, and on or about June, 2010, the defendant, Roland J. Flath, a citizen of the United States, did travel in foreign commerce, from the United States to Belize, and engage in and attempt to engage in illicit sexual conduct as defined in Title 18, United States Code, Section 2423(f), with another person, all in violation of Title 18, United States Code, Section 2423(c) and (e).

The conduct alleged in the criminal complaint occurred outside the jurisdiction of any particular State or District and within the venue of the United States District Court for the Eastern District of Wisconsin, as provided in Title 18, United States Code, Section 3238. The Eastern District of Wisconsin is the district of the last known residence of the defendant, Roland J. Flath.

I further state that I am a Special Agent with the U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, Homeland Security Investigations, and that this complaint is based on the following facts:

Please see the attached affidavit, which is continued on the attached sheet
and made a part hereof: _X_ Yes ___ No

BRANDON W. BIELKE
Special Agent, Department of Homeland Security
Signature of Complainant

Sworn to before me and subscribed in my presence,

October 7th 2010         at Milwaukee, Wisconsin
Date                     City and State

The Honorable William E. Callahan Jr.
United States Magistrate Judge
**Name & Title of Judicial Officer**          Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Brandon W. Bielke being duly sworn, do hereby depose and state:

## I. Purpose of this affidavit.

1. I make this affidavit in support of a criminal complaint charging ROLAND J. FLATH, DOB: XX/XX/1939, with violation of Title 18, United States Code, Section 2423(c) (traveling in foreign commerce and engaging in illicit sexual conduct).

## II. Background and experience of affiant.

2. I am a Special Agent with the U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), and have been so employed by HSI since February 2010. During the past ten years, I was employed as a Special Agent with the Internal Revenue Service, Criminal Investigation. I am currently assigned to the HSI Office of the Resident Agent in Charge in Milwaukee, Wisconsin. One of my duties is the investigation of child exploitation crimes.

3. In connection with my official duties, I investigate criminal violations of federal statutes, including violations of Title 18, United States Code, Section 2423(c) (traveling in foreign commerce and engaging in illicit sexual conduct).

4. As a result of my participation in this investigation, receiving information from other law enforcement officials, and analyzing documents and records, I am familiar with the circumstances surrounding the facts detailed in this affidavit. The information contained in this affidavit is not an exhaustive account of everything I know about this case. Rather, it contains only the facts that I believe are necessary to establish probable cause to believe that ROLAND J. FLATH committed the violation alleged in the criminal complaint.

### III. Statutory Authority

5. This investigation concerns alleged violations of Title 18, United States Code, Section 2423(c), engaging in illicit sexual conduct in foreign places.

6. The relevant statutory texts for purposes of this Affidavit are:

   a. Title 18, United States Code, Section 2423(c) states:

   Any United States citizen or alien admitted for permanent residence who travels in foreign commerce, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

   b. Title 18, United States Code, Section 2423(f) defines "illicit sexual conduct" as:

   (1) a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States; or (2) any commercial sex act (as defined in section 1591) with a person under 18 years of age.

   c. Title 18, United States Code, Section 2246(2) defines "sexual act" as:

   (A) contact between the penis and the vulva or the penis and the anus, which occurs upon penetration, however slight; (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or (D) the intentional touching, not through the clothing, of the genitalia of another person, who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

   d. Title 18, United States Code, Section 1591(e)(3) defines "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person."

7. The following terms have the indicated meaning in this affidavit:

a. The term "minor," as used herein, is defined as set forth in Title 18, United States Code, Section 2256, and means any person under the age of eighteen years.

b. The term "child pornography," as used herein, is defined as set forth in Title 18, United States Code, Section 8, and means any visual depiction of a minor involved in "sexually explicit conduct" as that term is defined in Title 18, United States Code, Sections 2256(8)(A) and (C).

c. The term "computer," as used herein, is defined as set forth in Title 18, United States Code, Section 1030(e)(1).

**IV. Venue.**

8. Title 18 United States Code, Section 3238, "Offenses Not Committed in Any District," states in relevant part: "The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender [. . .] is arrested or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender [. . .]"

9. ROLAND J. FLATH's last known residence of N5553 Hillcrest Road, Fond du Lac, Wisconsin is in the Eastern District of Wisconsin and therefore venue is proper in the Eastern District of Wisconsin under section 3238. On July 9, 2006, ROLAND J. FLATH took a flight from Chicago to Houston and then from Houston to Belize.

10. U.S. Department of State records reflect that ROLAND J. FLATH applied for and was issued a United States Passport on November 28, 1994. ROLAND J. FLATH provided evidence of U.S. citizenship through the submission of a Wisconsin driver license and birth certificate. Wisconsin Department of Health Services, Office of Vital Records confirmed that ROLAND J. FLATH was born on XX/XX/1939 in Greenbush, Wisconsin.

## V. Summary of Facts Establishing Probable Cause.

11. On or about June 14, 2010, a citizen informant contacted the Diplomatic Security Service, Regional Security Office, U.S. State Department, for the U.S. Embassy in Belize. The citizen informant identified herself as the manager of the Copper Bank Inn, in Copper Bank Village in Corozal, Belize. She stated that two of her workers were cleaning a guest room when they found a thumb drive. The workers reviewed the thumb drive to determine the owner and found a video of a man who they recognized as ROLAND J. FLATH ("FLATH") fondling the naked breasts of a minor girl in Copper Bank Village who they recognized as T.J.M. The workers also saw additional images of what appeared to be child pornography on the thumb drive. The workers and citizen informant were familiar with FLATH and knew him to be an American and thus contacted the Domestic Security Office at the U.S. Embassy in Belize.

12. The Diplomatic Security Service at the Belize U.S. Embassy received this information and the actual Kingston 1GB thumb drive from the citizen informant, contacted the local Belize police, and provided the thumb drive to them.

13. On June 15, 2010, a crime technician with the Belize police department viewed the Kingston 1GB thumb drive which was discovered at the Copper Bank Inn. After reviewing, the technician determined that the thumb drive contained obscenity and indecency involving what the technician believed to be a male foreigner. On that same day, the Belize police executed a search warrant for FLATH's residence in Copper Bank Village. Upon entering the home, the police encountered FLATH and a twenty year old pregnant woman. The Belize police then conducted a search of the home, whereon they discovered DVDs and a camera. The Belize police viewed some of the DVDs where they discovered videos of minor girl T.J.M. naked. One of these videos

documented FLATH requesting that minor girl T.J.M. perform several sexual acts. Additionally, the Belize police discovered a black Fujufilm camera case, a silver color cyber-shot Sony digital camera, a computer, and a few memory sticks/cards. These items were seized and later processed at the Corozal Police Station. Some of the images contained on the memory cards and DVDs included: an image of a partially nude female lying face down on a bed, a close up image of the upper part of a nude human body, a full view of a nude female lying face up on a bed, and a close up view of suspected blood on a nude lower part of a human body.

14. On June 16, 2010, the local Belize police arrested FLATH for fondling a minor and released him pending charges. As FLATH was a U.S. citizen, the U.S. Embassy was present at the time of the arrest. FLATH was provided his Miranda rights which FLATH waived. At that time, FLATH admitted to fondling the breasts of minor girl T.J.M. and drafted a statement to that effect.

15. Minor girl T.J.M. was also interviewed on June 16, 2010 by the Belize police and a Belize social worker. During the interview T.J.M. made the following statements:

    a. T.J.M. is currently fourteen years old. T.J.M. lives with her mother in Copper Bank Village, Corozal District in Belize. T.J.M. became friends with FLATH's allegedly adopted daughter T.F. when T.J.M. was nine years old. T.F. is approximately two years older than T.J.M. T.F. took T.J.M. to the FLATH residence which at that time was a camper in front of the lagoon in Copper Bank Belize. There, T.J.M. met FLATH for the first time as well as T.F.'s younger brother and Carla, the adopted mother. Thereafter, T.J.M. visited the FLATHs on a regular basis as T.F.'s friend.

b.  When T.J.M. was about ten years old, T.J.M. visited the FLATH's family home. T.J.M. does not recall the exact date or time but recalls it was in the morning. At that time, the FLATHs were no longer living in a camper but rather were constructing a house on the same property as the camper. When T.J.M. arrived, T.F. was not there but FLATH was there alone. FLATH invited T.J.M. into the house and told T.J.M. that he wanted to talk to her. T.J.M. sat on a dark orange two piece sofa and FLATH began talking to her. FLATH told T.J.M. that she was getting pretty, and getting big and that she needed to know things. FLATH proceeded to open a refrigerator that was not functioning and took a book out. FLATH opened the book and showed T.J.M. pictures of adults having sex. FLATH then asked T.J.M. whether she wanted to try the things that were in the book. T.J.M. told FLATH, "No." FLATH then proceeded to push T.J.M. down onto the sofa. T.J.M. became frightened and stood up. FLATH then hugged T.J.M. and took her blouse off. T.J.M. became very frightened at that point and told FLATH that she would shout for help. Just at that time, T.J.M. heard someone outside shouting for T.F. FLATH responded to the shouting by going to the door and T.J.M. used that time to put her blouse back on. When FLATH opened the door, T.J.M. noticed that her friend M.C. was there who was looking for T.F. M.C. and T.J.M. then stayed at the FLATH's residence watching television until T.F. returned.

c.  Later that day after M.C. went home and when T.J.M. was just about to leave, FLATH approached T.J.M., gave her $20 (Belize dollars), and instructed T.J.M. not to tell anyone about what he did. T.J.M. took the money and went home. After this incident, whenever T.J.M. visited the FLATH residence, she always stayed outside because she was afraid of FLATH.

d.  One day after the incident, T.J.M. went to the FLATH residence looking for T.F. At that time T.J.M. encountered T.F.'s younger brother. T.F's younger brother showed T.J.M. two photographs of FLATH having sex with his mother, Carla.

e. In or about August of 2009, when T.J.M. was thirteen years old, T.J.M. went to the FLATH's residence. She recalls this date because it was close to the San Joaquin Fiesta time. T.J.M. went to the FLATH's residence that day because FLATH had previously told T.J.M. that he wanted to see her when she had her menstrual cycle. T.J.M. went into the FLATH residence, encountered FLATH, and informed him of her menstruation cycle. FLATH then instructed T.J.M. to get on a bed. After T.J.M. got on the bed, FLATH took T.J.M.'s clothes off of her and started to take pictures of T.J.M.'s vaginal area while the menstrual blood was flowing out.

f. For the past two years, FLATH has paid T.J.M. so that he could take pictures of her. FLATH generally paid $10 or $20 Belize dollars to take the photographs. The only time FLATH gave her $100 Belize dollars, was the day FLATH took photos of T.J.M. menstruating.

g. About four months ago T.J.M. encountered a male acquaintance, who she has known for several years, on the street. This individual advised T.J.M. that he was cleaning a room at the Copper Bank Inn when he found a memory card. He put the memory card in the computer and saw naked images of T.J.M. and FLATH and that in one of the pictures, T.J.M. was bleeding. T.J.M. started crying at that point and proceeded to tell the male acquaintance about her encounters with FLATH and that FLATH had made her participate in the videos.

h. T.J.M. advised that FLATH would take pictures of T.J.M. and then proceed to insert his fingers in her vagina. FLATH also would make T.J.M. perform oral sex or otherwise touch his penis when he took photographs of her. If T.J.M. refused to perform oral sex on FLATH, he would not pay her. Most of the time, T.J.M. performed oral sex on FLATH for the money because her mother did not have food. T.J.M. would use the money she received from FLATH to buy food for her mother. T.J.M. informed her mother that she got the money from FLATH because she cleaned his house.

i. T.J.M. recalled she visited FLATH sometime in late January 2010. T.J.M. went to the FLATH residence after school around 3:30 p.m. because FLATH told her to go see him whenever she was menstruating, and she was menstruating that day. FLATH proceeded to take T.J.M.'s blouse off and took pictures of T.J.M. naked. FLATH then inserted his finger inside T.J.M.'s vagina, but took it out after T.J.M. told FLATH it hurt her. T.J.M. also visited FLATH one afternoon sometime in April 2010. When T.J.M. visited the FLATH residence that day, T.F. was not there. FLATH invited T.J.M. inside, asked T.J.M. to take her clothes off, and proceeded to take pictures of her in his kitchen area.

j. T.J.M. stated that FLATH had been taking nude pictures of her and penetrating her vagina with his fingers, since she was 9-10 years old. T.J.M. stated that she had visited FLATH about 30-35 times and that each time she visited him, he took videos or pictures of T.J.M. without her clothing on. All these incidents occurred at the FLATH residence.

16. The Belize police seized 43 DVD/CD-rom discs, a Western Digital hard drive serial number WMAN9KR96125, one Kingston 1GB thumb drive, and one Kingston 2GB memory stick from FLATH's residence. A Special Agent with the Diplomatic Security Service was present when the Belize police reviewed some of the DVDs seized from FLATH's residence. At that time the DSS agent observed some of the images on the DVDs which included hard core child pornography, bestiality, and video of T.J.M. naked on the bed. In that video, T.J.M. was lying on the bed naked apparently menstruating. FLATH is pictured in that video holding his finger which is covered with blood.

## VI. Search of the Electronic Evidence.

17. In light of the foregoing information a search warrant was obtained from the United States District Court for the District of Columbia (Misc. Case No. 10-513-M-01-Under Seal) to

search the electronic evidence for child pornography or other evidence concerning violations of Title 18, United States Code, Section 2423(c).

### VII. The Forensic Evidence.

18. A preliminary forensic examination of the electronic media revealed approximately 15-20 suspected child pornography images of minor child T.J.M. on both the DVDs and hard drive. There are several images that appear to have been duplicated. In addition, the following sexually graphic videos of T.J.M. were found:

1. Video of T.J.M. fondling her own breasts.

2. A person fondling a penis; neither the man's nor the girl's face are shown in the video; however the girl's skin tone is dark like T.J.M. and she is wearing two bracelets (a red and gold/transparent) that T.J.M. wears in other photos.

3. FLATH stripping T.J.M.'s shirt and fondling her breasts.

4. A person fondling a penis; again no faces are shown in this video, but the person fondling the penis has a similar skin tone to T.J.M. and is wearing the same two bracelets that appears to belong to T.J.M..

5. T.J.M. naked and sitting on a chair spread eagle with the focal point of the camera on her vaginal area.

6. A person fondling a penis; although no faces are shown, the persons involved appear to be T.J.M. and FLATH as their clothes are the same as worn by the participants in another video clearly identifying T.J.M. and FLATH.

7. T.J.M. in only her underwear putting her clothes on.

8. A person wearing the red and gold/transparent bracelets fondling a penis (no faces shown), similar to the bracelets wore by T.J.M. in other pictures and videos.

9. A dark skin girl fondling her own breasts; no face is shown, but the girl is wearing a silver ring on her left middle finger, similar to the ring that T.J.M. wears in other pictures and videos.

10. A girl's breasts being fondled by a man; although no faces are shown, the video appears to show T.J.M. as the girl is wearing the same bra and pink shirt as another picture of T.J.M.

11. A girl giving a man oral sex; although no faces are shown, but the girl's skin tone is similar to T.J.M.'s. The Exchangeable image file format data on this video is July 26, 2009.

### VIII. Conclusion.

19. Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that ROLAND J. FLATH traveled in interstate and foreign commerce, namely, Belize, for the purpose of engaging in illicit sexual conduct (as defined in Title 18, United States Code, Section 2246) with a person under 18 years of age (namely, minor child T.J.M) that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States, in violation of Title 18, United States Code, Section 2423(c).

20. Your affiant respectfully requests that this Court issue a criminal complaint and arrest warrant for ROLAND J. FLATH.