# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                            Case No. 11-CR-69

ROLAND J. FLATH,

      Defendant.

---

## ORDER AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS

---

Presently before the court is defendant Roland J. Flath's ("Flath") motion to dismiss the indictment and request for an evidentiary hearing. (Docket # 14.) On June 16, 2010, Flath, a United States citizen, was arrested by the Belize police and on June 18, 2010 was formally charged in Belize with two counts of aggravated assault for unlawfully committing an indecent assault on a minor. (Docket # 19-5.) After failing to appear in court in Belize, he was arrested in Guatemala and eventually deported to the United States. (Gov't Resp. at 11, Docket # 19.)

On March 22, 2011, a grand jury sitting in the Eastern District of Wisconsin returned a one-count indictment against Flath charging that between July 2006 and June 2010, he had traveled in foreign commerce from the United States to Belize and engaged in and attempted to engage in illicit sexual conduct as defined in 18 U.S.C. § 2423(f), with a person less than 18 years of age. (Docket # 4.) Flath was arraigned on the charge and entered a plea of not guilty. This case has been designated complex due to the novel legal issues presented. Trial before the Honorable J.P. Stadtmueller has not yet been scheduled.

Flath moves to dismiss the indictment on two grounds. First, Flath argues that 18 U.S.C. § 2423(c) and (f) is unconstitutional on its face because Congress is attempting to regulate conduct that has no relation to foreign commerce. (Def.'s Reply at 1, Docket # 25.) Second, Flath argues that, as applied to him, 18 U.S.C. § 2423(c) and (f) is unconstitutional and violates international law. (Def.'s Mot. to Dismiss at 1, Docket # 14.) Briefing has been completed on this motion. For the reasons that follow, I recommend that the motion be denied. I also deny the request for an evidentiary hearing as moot.

## BACKGROUND

### A. Facts

The parties have stipulated to the following facts. Flath was born in Wisconsin and is a citizen of the United States. (Stipulated Facts ¶ 1, Docket # 31.) Flath has never renounced his United States citizenship. (*Id.* at ¶ 2.) Flath's initial United States passport application received in November, 1994, listed a Fond du Lac, Wisconsin address as his permanent residence. (*Id.* at ¶ 3.) Flath's passport application received on November 11, 2000 by the Clerk of Court listed the Fond du Lac address as his permanent residence. (*Id.* at ¶ 4.) On May 12, 2005, Flath applied to replace his lost passport and listed the same Fond du Lac address as his permanent address. (*Id.* at ¶ 5.) On August 31, 2005, Flath renewed his Wisconsin driver's license and listed the same Fond du Lac address as his residence. (*Id.* at ¶ 6.)

On July 9, 2006, Flath took a flight from the United States to Belize. (*Id.* at ¶ 8.) On April 27, 2006, Flath obtained Belizean permanent residency. (*Id.* at ¶ 9.) On his July 10, 2007, application to renew his United States passport, Flath listed Copper Bank, Corozal, Belize as his

permanent residence. (*Id.* at ¶ 10.) On his July 10, 2007 application for additional visa pages, Flath listed Malone, Wisconsin as his permanent address. (*Id.* at ¶ 11.)

Bank records reflect that from January 3, 2005 through January 3, 2011, Flath received Social Security benefits which were electronically deposited monthly into his checking account maintained in Wisconsin bank. (*Id.* at ¶ 12.) The address on record with the Social Security Administration on October 3, 2006, November 27, 2006, and November 26, 2007 was the address in Fond du Lac, Wisconsin. (*Id.* at ¶ 13.) Bank records reflect that from January 3, 2005 through January 3, 2011, Flath received pension funds which were electronically deposited into his Wisconsin bank account. (*Id.* at ¶ 14.)

## B.    Relevant Treaty and Statute

In July of 2000, President Clinton signed the Optional Protocol to the United Nations Convention on the Rights of the Child on the Sale of Children, Child Prostitution, and Child Pornography (the "Optional Protocol"). S. Treaty Doc. No. 106-37, 2000 WL 33201696, 39 I.L.M. 1285; *see also United States v. Martinez*, 599 F. Supp. 2d 784, 798 (W.D. Tex. 2009). The Senate ratified the Optional Protocol on December 23, 2002, and it entered into force in January of 2003. *See* Optional Protocol (signatories) at 11, http://tinyurl.com/3qlj3k7. The Optional Protocol went into effect in Belize on January 1, 2004. *Id.* at 3. The Optional Protocol states in its preamble that the countries that are party to the present Protocol are "[g]ravely concerned at the significant and increasing international traffic of children" and that the parties were "[d]eeply concerned at the widespread and continuing practice of sex tourism[.]" 2000 WL 33201696, 39 I.L.M. at 1290. The Optional Protocol calls upon each signatory to criminalize, "as a minimum," the sale and sexual exploitation of a child as it relates to child prostitution "whether these

offences are committed domestically or transnationally or on an individual or organized basis[.]" *Id.* at 1292. The Optional Protocol also calls upon its signatories to "take such measures as may be necessary to establish its jurisdiction over the offences" when the offender is a national of the state in question, and when the victim is a national of the state in question. *Id.* at 1292-93.

One of the statutes that Congress enacted in 2003 to implement the Optional Protocol was 18 U.S.C. § 2423(c), as part of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Act of 2003 (the "PROTECT Act"). Pub.L. 108-21, 117 Stat. 650 (2003).[1] Section 2423(c) makes it unlawful for any United States citizen or alien admitted for permanent residence to travel in foreign commerce and engage in any illicit sexual conduct with another person in a foreign place. It covers both commercial sex offenses and non-commercial sex offenses. *Id.* Commercial sex offenses are criminalized under 18 U.S.C. § 2423(c) and (f)(2). Non-commercial sex offenses are criminalized under 18 U.S.C. § 2423(c) and (f)(1). *Id.* Specifically, in relevant part, Section 2423 provides:

> (c) Engaging in illicit sexual conduct in foreign places. Any United States citizen or alien admitted for permanent residence who travels in foreign commerce, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.
>
> . . .
>
> (f) Definition. As used in this section, the term "illicit sexual conduct" means (1) a sexual act (as defined in section 2246 [18 U.S.C. § 2246]) with a person under 18 years of age that would be in violation of chapter 109A [18 U.S.C. §§ 2241 et seq.] if the sexual act occurred in the special maritime and territorial jurisdiction of the

---

[1] Section 2423(b), which made it illegal to travel in foreign commerce or conspire to do so for the purpose of engaging in an illicit sexual act, was enacted as part of the Violent Crime Control and Law Enforcement Act of 1994. Unlike § 2423(b), Section 2423(c) eliminated the requirement to prove that the person traveled with the intent to commit the illicit act. *See also United States v. McGuire*, 627 F.3d 622, 624 (7th Cir. 2010) ("Section 2423(c) was added to punish persons who travel in foreign commerce and have sex with a minor in the course of the trip regardless of what the defendant intended when he set out on it.").

United States; or (2) any commercial sex act (as defined in section 1591 [18 U.S.C. § 1591]) with a person under 18 years of age.

18 U.S.C. § 2423(c), (f). Under subsection (f), a "sexual act" is defined to include "the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3). A "commercial sex act," however, is defined as any sex act, on account of which anything of value is given to or received by any person. 18 U.S.C. § 1591(e)(3).

In order for a defendant to be convicted under § 2423(c), the government must prove that: (1) the defendant is a United States citizen or permanent resident; (2) who travels in foreign commerce; and (3) engages in illicit sexual conduct, to wit, the commission of a sexual act with a person under 16 years old. *See* 18 U.S.C. § 2423(c). Here, the government intends to prove both definitions of illicit sexual conduct: commercial and non-commercial. (Gov't Resp. at 4, Docket # 18.)

## REQUEST FOR EVIDENTIARY HEARING

As a preliminary matter, Flath seeks an evidentiary hearing on the Motion to Dismiss to elicit evidence regarding his ties to the United States in support of his "as applied" challenge to the constitutionality of 18 U.S.C. § 2423(c). The government opposes an evidentiary hearing, arguing that an evidentiary hearing is not needed because the only relevant fact, citizenship, is not disputed. (Gov't Resp. at 51, Docket # 19.) Subsequently, the parties filed stipulated facts. (Docket # 31.) Because the motion can be decided on the stipulated facts, I will deny the request for an evidentiary hearing on the defendant's Motion to Dismiss as moot.

**ANALYSIS**

**I.      Does § 2423(c) exceed Congress' authority under the foreign commerce clause?**

Article I, section 8, Clause 3 of the United States Constitution gives Congress the power to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Congressional power under the Commerce Clause "is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution." *United States v. Vasquez*, 611 F.3d 325, 329 (7th Cir. 2010) (internal quotation and citation omitted). It is, however, not unrestrained. The Court plays an important role. "[A] court will not inevitably rubber stamp all congressional statutes as it is still the province of the courts to determine whether Congress has exceeded its enumerated powers." *Id*. When Congress passes a law using its Commerce Clause power, it becomes a function of the court to decide whether a "rational basis exist[s] for concluding that a regulated activity sufficiently affected interstate commerce." *United States v. Lopez*, 514 U.S. 549, 557 (1995). If a rational basis exists, the court's inquiry ends. *Gonzales v. Raich*, 545 U.S. 1, 22 (2005). "Due respect for the decisions of a coordinate branch of government demands that the court invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." *United States v. Morrison*, 529 U.S. 598, 607 (2000).

In the domestic or interstate commerce context, the Supreme Court has identified three broad categories of activity that Congress may regulate under its commerce power. First, Congress may regulate the use of the channels of interstate commerce. *Lopez*, 514 U.S. at 558. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only

- 6 -

from intrastate activities. *Id*. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce. *Id*. at 558-59.

No analogous framework exists for foreign commerce. *United States v. Clark*, 435 F.3d 1100, 1103 (9th Cir. 2006). The Ninth Circuit and Third Circuit, the only two Courts of Appeals that have analyzed § 2423(c) under the Foreign Commerce Clause, have not relied on the *Lopez* framework. In *Clark*, which addressed only the commercial sex acts prong of § 2423(c), the Ninth Circuit noted that "[l]ikewise, although our precedent illustrates that the inter-state categories may be adapted for use in specific foreign commerce context, the categories have never been deemed exclusive or mandatory, nor has the Supreme Court suggested their application in relation to the Foreign Commerce Clause." *Id* at 1116 (internal citations omitted). In the end, the court found a rational relationship between the statute and Congress's authority under the Foreign Commerce Clause. It held that "§ 2423(c)'s combination of requiring travel in foreign commerce, coupled with engagement in a commercial transaction while abroad, implicates foreign commerce to a constitutionally adequate degree." *Id* at 1114.

The Third Circuit in *United States v. Bianchi,* 386 Fed.Appx. 156 (3rd Cir. 2010)(unpublished), held that both commercial and non-commercial sex acts under § 2423(c) were within Congress's power to regulate under the Foreign Commerce Clause. As to the commercial sexual conduct prong, the Third Circuit relied on *Clark. Id* at 161-62. In regards to the non-commercial sex acts covered by § 2423(c), the court held that the defendant did not meet his burden to show that Congress exceeded its authority under the Foreign Commerce Clause

and overcome the presumption that Congress stays within its constitutional bounds when it enacts a statute. *Id* at 162.

In this case, the parties disagree whether the *Lopez* factors are applicable in the foreign commerce context. Given the lack of precedent from our circuit and the dearth of cases on this issue in general, the teachings of *Lopez* and *Morrison* guide the Court's analysis in this case. In conjunction with the *Lopez/Morrison* framework, the Court will also be guided by two distinctions between the Interstate and Foreign Commerce Clause. *See Clark*, 435 F.3d at 1103, 1116 ("At times, forcing foreign commerce cases into the domestic commerce rubric is a bit like one of the stepsisters trying to don Cinderella's glass slipper. . . "). The first distinction is that the Supreme Court has recognized that Congress has broader power to regulate commerce with foreign nations than among the states. *Japan Line, Ltd. v. Los Angeles County*, 441 U.S. 434, 448 (1979)("Although the Constitution, Art. I, § 8, cl. 3, grants Congress power to regulate commerce 'with foreign Nations' and 'among the several States' in parallel phrases, there is evidence that the Founders intended the scope of the foreign commerce power to be the greater.") Second, the considerations of federalism and state sovereignty which exists when considering interstate commerce powers are absent in the foreign commerce arena. *Clark*, 435 F.3d at 1103.

Flath argues that of the *Lopez* categories, only the first two apply because the statute uses the language "in foreign commerce" not "affecting foreign commerce." (Def.'s Reply at 6, Docket # 25.) There is authority in support of Flath's argument. *See U.S. v. Wright*, 625 F.3d 583, 592-93 (9th Cir. 2010)(internal quotation and citation omitted)("To be sure, Congress uses different modifiers to the word 'commerce' in the design and enactment of its statutes. Where Congress uses the phrases 'affecting commerce' or 'involving commerce,' it 'signals an intent to

exercise [its] commerce power to the full.' However, the phrases 'in commerce' or 'engaged in commerce,' are understood to have a more limited reach.").

However, even if the reach is more limited when the "in commerce" or "engaged in commerce" language is used, given the distinctions between the Interstate and the Foreign Commerce Clause, I am not persuaded that I am precluded from using the third *Lopez* factor as an analytical tool. "The categories are a guide, not a straightjacket." *Clark*, 435 F.3d at 1116. Thus, I now turn to the application of the three *Lopez* factors.

**A.      Is § 2423(c) a regulation of the use of the channels, instrumentalities, or persons in foreign commerce?** [2]

Flath argues that Congress' power in regulating the channels of interstate commerce is limited to keeping the channels, instrumentalities, or the person or things in commerce free from evil uses. (Def.'s Reply at 8-9, Docket # 25.) Flath further argues there needs to be a nexus between the travel and the harm caused. (*Id.* at 10.)

It is true that unlike in § 2423(b), § 2423(c) does not require a nexus between the travel and the illicit act. The illicit act occurs after travel is complete. Thus, the use of the channels of commerce is divorced from the immoral or evil act being regulated. This argument has force. However, although the Seventh Circuit has not addressed the constitutionality of § 2423(c) under the Foreign Commerce Clause, Flath's argument is undermined by the Seventh Circuit's decision in *United States v. Vasquez*, 611 F.3d 325 (7th Cir. 2010). In *Vasquez*, the defendant was convicted of knowingly failing to register as a sex offender after traveling in interstate commerce. The defendant argued that the statute was unconstitutional because the interstate travel had no connection to the failure to register. Over strong dissent, the Seventh Circuit upheld the

---

[2]      Here, the first and second *Lopez* categories are grouped together.

constitutionality of the statute holding that "section 2250 is a permissible exercise of congressional power under the Commerce Clause because the use of the channels and instrumentalities of interstate commerce is necessarily a part of the commission of the targeted offense. Vasquez, who had failed to register as a sex offender in Illinois, was undeniably a 'person in interstate commerce' when he moved from Illinois to California, and traveled to California via the 'channels of interstate commerce.'" *Id.* at 330. Thus, the Seventh Circuit concluded that Section 2250 satisfied the first two *Lopez* factors.

Significantly, in reaching this conclusion, the Seventh Circuit found that the statute's failure to require a connection between the travel and the criminal act of failing to register "not fatal." *Id.* The Court determined that the act of travel is sufficient to bring a defendant's subsequent failure to register within Congress' power to regulate. *Id.* at 330-31.

Following the reasoning of *Vasquez*, because § 2423(c) is only invoked when a person travels in foreign commerce, the use of the channels and instrumentalities of interstate commerce is necessarily a part of the commission of the offense. Accordingly, the defendant was a person in foreign commerce when he traveled from the United States to Belize via the channels of foreign commerce. *See United States v. Pendleton*, No. 08-111-GMS, 2009 WL 330965, *4 (D. Del. Feb. 11, 2009) (finding it is the travel element and not the commercial nature of the sexual act that places § 2423(c) and (f)(1) squarely within Congress' authority to regulate and protect Foreign Commerce). Therefore, consistent with *Vasquez*, I conclude that § 2423(c) is a proper regulation of persons in foreign commerce and of the uses of the channels of foreign commerce under Congress' commerce power.

**B.     Does § 2423(c) regulate an activity that substantially affects foreign commerce?**

Section 2423(c) is also justified as a regulation of activities that substantially affect foreign commerce. As discussed above, Flath submits that the statute cannot be analyzed under this third *Lopez* factor and therefore does not discuss it. The government argues that the statute requires travel and regulates activity that is plainly economic in nature. (Gov't Resp. at 30-31, Docket # 19.) Although § 2423(c) prohibits non-commercial sexual activity, the government argues the link to commerce is clear and not attenuated, especially where defendants travel in foreign commerce and spend money derived from U.S. sources to pay for hotels and the sexual activity. (*Id.* at 31.) The government also cites to *Gonzales v. Raich*, 545 U.S. 1, 23 (2005), which finds the government can regulate non-commercial activity where the activity is part of a class of activities that is within the reach of federal power. (*Id.* at 32.)

The third *Lopez* factor has its own analytical test. The statute is examined to determine (1) whether the regulated activity is "economic" in nature; (2) whether the statute has an express jurisdictional element; (3) whether there is legislative history or congressional findings articulating the statute's effect on interstate commerce; and (4) whether there is a link between the prohibited activity and its effect on commerce. *Morrison*, 529 U.S. at 610-12.

 Applying this test, the constitutionality of § 2423(c) is also justified as a regulation of activity that substantially affects foreign commerce. First, although the statute regulates commercial activity, i.e., travel and commercial sex, it also regulates non-commercial sex, activity that is non-commercial in nature. This prong does not weigh in favor of a finding of constitutionality. However, if a statute regulates non-commercial activity, the strength of the other three factors will determine the statute's constitutionality. *See United States v. Patton*, 451

F.3d 615, 624 (10th Cir. 2006); *see also Lopez*, 514 U.S. at 560-66 (analyzing the other factors of

the substantial effects analysis even after determining that the act in question was non-economic

in nature).

Second, Section 2423(c) contains an express jurisdictional element. The statute is only

invoked when a person "travels in foreign commerce." 18 U.S.C. § 2423(c). This factor weighs in

favor of a finding of constitutionality.

Next, although there are no particularized congressional findings as to how the non-

commercial sex acts substantially affect commerce, Congress clearly intended to address what it

saw as the broad economic implications of sex tourism. The provision that became § 2423(c) was

first proposed as part of the Sex Tourism Prohibition Improvement Act of 2002, and the House of

Representatives relied at that time on Article I, § 8 of the Constitution as the authority for

enactment. *See* H.R.Rep. No. 525 at 5,107th Cong., 2nd Sess., 2002 WL 1376220, *4 (June 24,

2002). While this statute was passed only in the House of Representatives, it contained a statute

that was substantively identical to what would later become § 2423(c) and § 2423(f). The House

Report to this bill, in a section entitled "Background and Need for the Legislation," states:

> Many developing countries have fallen prey to the serious problem of international sex
> tourism . . . . Because poor countries are often under economic pressure to develop
> tourism, those governments often turn a blind eye toward this devastating problem
> because of the income it produces. Children around the world have become trapped and
> exploited by the sex tourism industry . . . . This legislation will close significant loopholes
> in the law that persons who travel to foreign countries seeking sex with children are
> currently using to their advantage in order to avoid prosecution.

2002 WL 1376220, at *2.

In the House Report, it explains that Section 2 of the bill amends 18 U.S.C. § 2423 to make it a

crime for a U.S. citizen to travel to another country and engage in illicit sexual conduct with

minors, as the "current law requires the Government to prove that the defendant traveled with

the intent to engage in the illegal activity." *Id*. at *4. The House Report continues, "[u]nder this provision the Government would only have to prove that the defendant engaged in illicit sexual conduct with a minor while they were in a foreign country." *Id*.

The PROTECT Act was passed by both houses of Congress on April 30, 2003. As part of the House Conference Report accompanying the PROTECT Act, the House stated that its proposed modification to § 2423:

> [A]ddresses a number of problems related to persons who travel to foreign countries and engage in illicit sexual relations with minors. Current law requires the government to prove that the defendant traveled with the intent to engage in the illegal activity. Under this section, the government would only have to prove that the defendant engaged in illicit sexual conduct with a minor while in a foreign country.

H.R. Conf. Rep. 108-66, 108th Cong. 1st Sess. 2003, reprinted in 2003 U.S.C.C.A.N. 683, 686.

Looking at the language of the PROTECT Act and the language in the House Report accompanying the Sex Tourism Prohibition Improvement Act of 2002, it is clear § 2423(c) is designed to combat worldwide sex tourism and child prostitution, which Congress sees as a serious problem caused in part by the economic incentives of developing countries to turn a blind eye to the problem because of the income that tourism produces. *See Martinez*, 599 F. Supp. 2d at 807. This legislative record also supports a finding of constitutionality.

Finally, there is a link between the prohibited activity and its effect on foreign commerce. In *Gonzales v. Raich*, 545 U.S. 1 (2005), the respondents were cultivating marijuana for home consumption under California's Compassionate Use Act which authorized limited marijuana use for medicinal purposes. *Id*. at 6. The Supreme Court found that the respondents were cultivating for home consumption a fungible commodity for which there is an established, albeit illegal, interstate market. *Id*. at 18. Even though the cultivation was for home consumption and not being

sold in the interstate market, the Court found that Congress had a rational basis for concluding that leaving home-consumed marijuana outside federal control would affect price and market conditions. *Id.* at 19.

In this case, the prohibition on non-commercial sex acts is part of a larger regulatory scheme to restrict sex tourism. The scheme also includes regulation of commercial sex acts, the criminalization of sex tour operations, and conspiracy to aid in sex tourism. 18 U.S.C. § 2423(a)-(e). Like the drug industry in *Raich*, sex tourism is a multi-billion dollar industry. *See Martinez*, 599 F. Supp. 2d at 807 n.19; *see also* Christine L. Hogan, Note, *Touring Commerce Clause Jurisprudence: The Constitutionality of Prosecuting Non-Commercial Sexually Illicit Acts Under 18 U.S.C. § 2423(c)*, 81 St. John's L.Rev. 641, 646 (2007). Sex tourists transfer American dollars from the United States to the foreign countries. *Id.*

In *Raich*, the Court found that if non-commercial drug possession was not regulated, there would be a "gaping hole" in the Controlled Substances Act. 545 U.S. at 22. Similarly, failing to regulate non-commercial sex tourism would leave a gaping hole in the PROTECT Act. *See Martinez*, 599 F. Supp. 2d at 808. Consequently, Congress had a rational basis for concluding that leaving non-commercial sex with minors outside the regulatory scheme could affect the price for child prostitution services and other market conditions in the child prostitution industry, thus substantially affecting the international sex tourism market. *Id.* Therefore, this last factor also supports a finding of constitutionality.

In sum, considering Congress' broad power in foreign commerce and the Supreme Court's most recent Commerce Clause case, *Raich*, I conclude that 18 U.S.C.§ 2423(c) prohibits activities that substantially affect foreign commerce. There is the jurisdictional element (travel in foreign

commerce) and the legislative history that shows Congress' concern with the economic implications of sex tourism. Additionally, as in *Raich*, where non-commercial marijuana was controlled as part of the larger regulatory scheme to control prohibited drugs, non-commercial illicit sex is similarly prosecuted as part of a larger regulatory scheme to regulate the sex tourism industry.

## II.  Is Section 2423(c) a valid exercise of Congress' power to implement a treaty?

The government makes a separate argument that § 2423(c) is a valid exercise of Congress' power to pass legislation to implement a treaty entered into by the United States. (Gov't Resp. at 42, Docket # 19.) The defendant does not address this argument.

The Constitution gives the President the authority to enter into treaties, subject to ratification by the Senate. *See* U.S. Const. Art. II, § 2, cl. 2. A treaty must still observe constitutional prohibitions. *Reid v. Covert*, 354 U.S. 1, 17 (1957). However, if a "'treaty is valid[,] there can be no dispute about the validity of the [implementing] statute under Article I, [§ ] 8, as a necessary and proper means to execute the powers of the government.'" *United States v. Frank*, 486 F. Supp. 2d 1353, 1356 (S.D. Fla. 2007) (quoting *Missouri v. Holland*, 252 U.S. 416, 432 (1920)).

The treaty power does not literally authorize Congress to act legislatively, as it is an Article II power authorizing the President, not Congress, to make Treaties. *United States v. Lara*, 541 U.S. 193, 201 (2004); U.S. Const., Art. II, § 2, cl. 2. However, treaties made pursuant to that power can authorize Congress to deal with "'matters' with which otherwise 'Congress could not deal.'" *Lara*, 541 at 201 (quoting *Holland*, 252 U.S. at 433).

The regulation of commercial sex with minors, as contemplated by the Optional Protocol, does not offend the Constitution. *Frank*, 486 F. Supp. 2d at 1357. Child sex tourism is a significant problem that is, by its very nature, a global concern. *Id.* The Optional Protocol states that one of its purposes is to "raise public awareness" in order to "reduce consumer demand for the sale of children, child prostitution and child pornography . . . ." 2000 WL 33201696, 39 I.L.M. at 1291.

The purpose of the Optional Protocol is to prohibit activities, such as sex tourism, that are widespread problems in the international community. It was within the President's power to enter into a treaty, such as the Optional Protocol, to address these international concerns.

Further, it was proper for Congress to enact § 2423(c) under the Necessary and Proper Clause of the Constitution to implement the Optional Protocol. First, § 2423(c) bears a rational relationship to the Optional Protocol. Articles 2(b) and 3(1)(b) of the Optional Protocol specifically deal with child prostitution, as does § 2423(c). 2000 WL 33201696, 39 I.L.M. at 1291-92. The statute is therefore necessary and proper. *Frank*, 486 F. Supp. 2d at 1358. Second, § 2423(c) reasonably implements the Optional Protocol. Article 3(4) and Article 4(2) require that countries take appropriate measures to establish the liability of individuals for offenses such as paying a child for sex. 2000 WL 33201696, 39 I.L.M. at 1292-93. Section 2423(c) creates this liability. As such, § 2423(c) reasonably implements the Optional Protocol.

## III. Does § 2423 (c) violate international law?

It is well established that Congress has the authority to apply its laws, including criminal statutes, beyond the territorial boundaries of the United States. *United States v. Dawn,* 129 F.3d 878, 882 (7th Cir. 1997). Although Congress has the authority to apply its laws extraterritorially,

legislation of Congress is presumed to apply only within the territorial jurisdiction of the United States unless Congress has clearly expressed a contrary intent. *Id*. Here, Section 2423(c) explicitly applies to conduct outside of the United States. The statutory section is entitled "Engaging in illicit sexual conduct in foreign places" and reaches people who "travel[ ] in foreign commerce." 18 U.S.C. § 2423(c). Thus, the plain language of the statute shows it is exclusively targeted at extraterritorial conduct. *See Clark*, 435 F.3d at 1106.

Flath does not contest this longstanding principle, but rather contends that application of § 2423(c) to him is unreasonable under principles of international law. (Def.'s Mot. to Dismiss at 7, Docket # 14.).The government offers that nationality alone supports the exercise of extraterritorial jurisdiction and the exercise of this jurisdiction is reasonable, citing *Clark*, 435 F.3d at 1106; *Pendleton*, 2009 WL 330965, at *5; and *Martinez*, 599 F. Supp. 2d at 801. (Gov't Resp. at 37, 40-42, Docket # 19.).

There are five general principles that permit extraterritorial criminal jurisdiction: territorial, national, protective, universal, and passive personality. *See Clark*, 435 F.3d at 1106 n.8; Restatement (Third) of Foreign Relations Law of the United States ("Restatement") § 402 (1987). Even when one of the bases for jurisdiction is present, a state may not exercise jurisdiction when the exercise of such jurisdiction is unreasonable. *See Clark*, 435 F.3d at 1107; Restatement § 403. The Restatement lists the following factors to be considering when determining reasonableness: (1) the link of the activity to the territory of the regulating state, i.e., the extent to which the activity takes place within the territory, or has substantial, direct, and foreseeable effect upon or in the territory; (2) the connections, such as nationality, residence, or economic activity, between the regulating state and the person principally responsible for the activity to be regulated, or

between that state and those whom the regulation is designed to protect; (3) the character of the activity to be regulated, the importance of regulation to the regulating state, the extent to which other states regulate such activities, and the degree to which the desirability of such regulation is generally accepted; (4) the existence of justified expectations that might be protected or hurt by the regulation; (5) the importance of the regulation to the international political, legal, or economic system; (6) the extent to which the regulation is consistent with the traditions of the international system; (7) the extent to which another state may have an interest in regulating the activity; and (8) the likelihood of conflict with regulation by another state.[3] Restatement § 403.

In *Clark*, the defendant, a U.S. citizen, was arrested in Cambodia for engaging in commercial sex acts with two minor children. 435 F.3d at 1103. The defendant was returned to the United States and pled guilty to two counts under § 2423(c) and (e). *Id*. at 1104. The defendant argued that extraterritorial application of § 2423(c) violates principles of international law. *Id*. at 1106. The court found that the defendant's citizenship was uncontested; thus, extraterritorial application of § 2423(c) was proper based on the nationality principle. 435 F.3d at 1106-07. The *Clark* court further found extraterritorial application reasonable, considering Cambodia consented to the United States taking jurisdiction and did not object to the defendant's extradition and trial under U.S. law and the defendant stated to a U.S. official in Cambodia that he wished to return to the United States rather than stay in a Cambodian prison. *Id*. at 1107.

In *Pendleton*, the defendant, a U.S. citizen, was arrested in Germany for an offense involving sexual contact with a teenage boy. 2009 WL 330965, at *1. The defendant was

---

[3] The Restatement further states that the list of considerations is not exhaustive and no priority or other significance is implied in the order in which the factors are listed. Restatement § 403 cmt. b. The weight to be given to any particular factor or group of factors depends on the circumstances. *Id.*

convicted under German law and incarcerated in Germany. *Id.* When he was released from German custody, the defendant was deported back to the United States. *Id.* The defendant was then indicted for engaging in illicit sexual conduct with a minor under the non-commercial prong of § 2423(c) and (f)(1). *Id.* at *2. The defendant argued his prosecution under § 2423(c) and (f)(1) was barred by principles of international law. *Id.* at *5. Specifically, the defendant argued his prosecution under § 2423(c) violated applicable limitations on the exercise of extraterritorial jurisdiction and was unreasonable as a matter of international law because he was previously prosecuted in Germany. *Id.*

The *Pendleton* court rejected both of these arguments. First, the court found it was clear from the plain language of the statute that Congress intended the PROTECT Act to be applied extraterritorially and international law principles cannot override or otherwise invalidate Congress' clear intent. *Id.* at *6. Further, the defendant's prosecution in Germany did not diminish the United States' right to enforce its law under the PROTECT Act. Germany and the United States are separate sovereigns whom each have an interest in upholding their own laws. *Id.*

In *Martinez*, the defendant, also a U.S. citizen, took a minor to Mexico where he sexually assaulted her. She escaped from the defendant and returned to the United States. In finding § 2423(c) reasonable under principles of international law, the *Martinez* court considered the universal condemnation of illicit sex with minors in the international community, including Mexico, the fact both victim and defendant were U.S. citizens, and the link with U.S. territory. 599 F. Supp. 2d at 801-02.

Here, it is clear that the international community has condemned the act of illicit sex with minors, as evidenced by the fact that 147 countries are parties to the Optional Protocol, including Belize. http://tinyurl.com/3ft7m9e. Given this consistent and strong affirmation against illicit sex with minors, the prosecution of Flath by the United States will not conflict with regulation by another country. Specifically, Belize, having signed the Optional Protocol, will not be offended by laws enacted by the United States to regulate the conduct of Americans in its country to implement the treaty of which it is a party. Additionally, the United States regulation of its own citizen's conduct abroad in no way displaces Belize's authority to also punish those who violate its laws. Indeed, Belize also indicted Flath.

What is more, while Flath may have transferred his residence to Belize, he still maintains significant ties to the United States and has retained his citizenship. (Stipulated Facts ¶ 1, Docket # 31.) Flath maintains a United States passport and Wisconsin driver's license. (*Id.* ¶¶ 5-6, 10.) Flath continues to receive Social Security benefits and pension funds which are deposited into a bank in Fond du Lac, Wisconsin. (*Id.* ¶¶ 12, 14.) Considering the factors articulated in the Restatement and the above cited cases, § 2423(c) is not an unreasonable exercise of jurisdiction with respect to Flath.

## IV. As applied to Flath, is § 2423(c) unconstitutional?

Finally, Flath argues that § 2423(c) is invalid as applied to him because he has "essentially transferred his residence to Belize and Guatemala." (Def.'s Mot. to Dismiss at 8, Docket # 14.) Flath further argues that § 2423(c) is unconstitutional as applied to him because his travel significantly predated the allegations, there is no tie between the foreign travel and the alleged conduct, and because Flath's income was at least partially derived from his farming enterprise

and management of the Copper Bank Inn, two businesses based in Belize with no ties to the United States. (Def.'s Reply at 11, Docket # 25.)

The government responds that the tie between Flath's travel and the prohibited conduct is relevant to his facial challenge of § 2423(c), not Flath's "as applied" challenge. (Gov't Sur-Reply at 7, Docket # 33.) The government argues the "key factors which implicate the application of § 2423(c)" are U.S. citizenship and foreign travel. (*Id*. at 8.) I agree.

In *Clark*, the defendant primarily resided in Cambodia from 1998 until his extradition in 2003. 435 F.3d at 1103. The defendant was arrested in late June 2003. *Id*. The court noted the defendant's citizenship alone was sufficient to make application of § 2423(c) to his extraterritorial conduct neither arbitrary nor fundamentally unfair. *Id*. at 1108. The court further noted that the defendant's U.S. investments, ongoing receipt of federal retirement benefits, and use of U.S. military flights also "underscore his multiple and continuing ties with this country." *Id*. at 1108 n.12.

As stated above, it is uncontested that Flath is a United States citizen. (Stipulated Facts ¶ 1, Docket # 31.) Additionally, while he may have transferred his residence to Belize, he still maintains significant ties to the United States. He maintains a United States passport and Wisconsin driver's license. (*Id*. ¶¶ 5-6, 10.) He continues to receive Social Security benefits and pension funds which are deposited into his Wisconsin bank account. (*Id*. ¶¶ 12, 14.) As the court in *Clark* observed, United States citizenship "'implies a duty of allegiance on the part of the member and a duty of protection on the part of society. These are reciprocal obligations, one being a compensation for the other.'" *Clark*, 435 F.3d at 1108 (quoting *Luria v. United States*, 231

U.S. 9, 22 (1913)). Considering Flath's U.S. citizenship, U.S. ties, and his reciprocal obligations to the U.S., application of § 2423(c) to Flath is neither unreasonable nor unconstitutional.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the defendant's motion for evidentiary hearing on motion to dismiss is **denied as moot**.

**IT IS THEREFORE RECOMMENDED** that the defendant's motion to dismiss be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C), and Federal Rule of Criminal Procedure 59(b)(2) (as amended effective December 1, 2009), whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of the date of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal.

Dated at Milwaukee, Wisconsin this <u>14th</u> day of September, 2011.

BY THE COURT

<u>_s/Nancy Joseph_</u>
NANCY JOSEPH
United States Magistrate Judge