UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | |
| v. | Case No. 11-CR-69-JPS |
| ROLAND J. FLATH, | |
| Defendant. | ORDER |

On March 22, 2011, a federal grand jury in the Eastern District of Wisconsin returned an indictment against defendant Roland J. Flath ("Flath") alleging that Flath, a citizen of the United States, did travel in foreign commerce, from the United States to Belize, and engaged in and attempted to engage in illicit sexual conduct as defined in 18 U.S.C. § 2423(f), with a person less than 18 years of age in violation of 18 U.S.C. § 2423(c) and (e). On March 25, 2011, Flath appeared for arraignment before United States Magistrate Judge William E. Callahan, entering a plea of not guilty.

On April 22, 2011, Flath moved to dismiss the indictment, arguing that § 2423(c) is unconstitutional on its face. Flath also moved to suppress all items seized from his residence in Belize pursuant to a Belizean warrant and to suppress electronic evidence seized pursuant to a warrant issued by the United States District Court for the District of Columbia as fruit of the Belizean warrant.

On September 14, 2011, and November 18, 2011, respectively, United States Magistrate Judge Nancy Joseph issued recommendations to this court that Flath's motion to dismiss be denied and that Flath's motion to suppress be denied. Flath subsequently filed objections to the Magistrate's

recommendations. Flath only challenges the Magistrate's finding that § 2423(c) is constitutional on its face as well as the Magistrate's recommendation that his motion to suppress be denied.[1] On December 16, 2011, the government filed a response to Flath's objections. Accordingly, the court is now prepared to rule on Flath's pending motions.

1.  Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B), a magistrate may consider dispositive motions and issue recommendations to the district judge regarding the motions. *See id.* When a party objects to a magistrate's findings, the district court judge must make *de novo* determinations as to these findings. *See id.* § 636(b)(1)(C); *see also Delgado v. Bowen,* 782 F.2d 79 (7th Cir. 1986). The district court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate and has the final authority of judgment in the case. *Delgado,* 782 F.2d at 82.

2.  Motion to Dismiss

Federal statute 18 U.S.C. § 2423(c) prohibits a United States citizen "who travels in foreign commerce" from engaging in "any illicit sexual conduct with another person." "Illicit sexual conduct" includes "a sexual act with a person under 18 years of age." 18 U.S.C. § 2423(f). The indictment alleges that between July 2006 and June 2010, Flath – a citizen of the United

---

[1] Flath does not object to the Magistrate's order denying Flath's motion for a bill of particulars. (Docket #41). Therefore, the court will not disturb this ruling. Moreover, Flath does not object to the Magistrate's recommendation that this court deny his motion to dismiss the indictment on duplicity grounds, filed as part of Flath's reply to the government's response to his motion to suppress, motion to dismiss, and motion for a bill of particulars. (*See* Docket #25). Accordingly, the court will adopt the Magistrate's recommendation in this respect and deny Flath's motion to dismiss on duplicity grounds.

States – traveled in foreign commerce from the United States to Belize, and engaged in illicit sexual conduct with a person less than 18 years of age in violation of 18 U.S.C. § 2423(c) and (e).

In his objections, Flath argues that § 2423(c) is facially unconstitutional. Specifically, Flath contends that this federal statute is not a legitimate exercise of Congress's power to regulate foreign commerce. Flath submits that by not requiring some type of nexus between traveling from one state to another or from the United States to another country and the illicit sexual conduct, Congress has improperly crossed the traditional boundaries that have marked its power under the Commerce Clause.

Because Flath raises a facial challenge, the court will only invalidate the statute if it finds "that no set of circumstances exists under which the Act would be valid, i.e., that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). Indeed, the Supreme Court has noted that a facial challenge is the "most difficult challenge to mount successfully." *United States v. Salerno,* 481 U.S. 739, 745 (1987).

The Constitution authorizes Congress "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. When Congress passes a law using its Commerce Clause power, it becomes a function of the court to decide whether a "rational basis exist[s] for concluding that a regulated activity sufficiently affected interstate commerce." *United States v. Lopez,* 514 U.S. 549, 557 (1995). Though the Supreme Court once defined "commerce" quite broadly, recently it has recognized three general categories of activity that Congress may regulate under its interstate commerce power. *Gonzales v. Raich,* 545 U.S. 1,

5 (2005). These include: (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce; and (3) activities that substantially affect interstate commerce. *Lopez,* 514 U.S. at 558–59.

While no analogous framework exists for foreign commerce, the court finds the *Lopez* factors to be an appropriate starting point for analyzing whether a specific activity may be regulated under the foreign commerce power. However, at the same time, the court is mindful of the significant distinctions between the interstate and foreign commerce powers. First, the Supreme Court has recognized that Congress has broader power to regulate commerce with foreign nations than among states. *Japan Line, Ltd. v. Los Angeles Cty*, 441 U.S. 434, 448 (1979). Next, the interplay of federalism and state sovereignty, so prevalent in the interstate commerce context, is absent in the foreign commerce arena. *See United States v. Clark,* 435 F.3d 1100, 1103 (9th Cir. 2006). Keeping in mind these differences, the court will move to an analysis of the *Lopez* factors.

With respect to the first two *Lopez* factors – the use of channels, instrumentalities, or persons in foreign commerce – Flath generally argues that there needs to be a nexus between his foreign travel and the harm caused, a requirement that is absent from § 2423(c). However, this court agrees with the Magistrate that Flath's argument is undermined by the Seventh Circuit's opinion in *United States v. Vasquez*, 611 F.3d 325 (7th Cir. 2010), which held that the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250(a), did not exceed Congress's authority under the Commerce Clause.

In *Vasquez*, the defendant was convicted of knowingly failing to register as a sex offender after traveling in interstate commerce. 611 F.3d 325. Much like Flath's current argument, the defendant argued that the statute was unconstitutional because the interstate travel had no connection to the failure to register. The Seventh Circuit upheld the constitutionality of the statute, over strong dissent, holding that the statute in question was a permissible exercise of congressional power under the Commerce Clause because the use of the channels and instrumentalities of interstate commerce were necessarily a part of the commission of the targeted offense. *Id.* at 330. The court reasoned that Vasquez – who had failed to register as a sex offender in Illinois – was undeniably a "person in interstate commerce" when he moved from Illinois to California, and traveled to California via the "channels of interstate commerce." *Id.* The Seventh Circuit found SORNA's failure to require a connection between the travel and the criminal act of failing to register "not fatal." *Id.* Indeed, the court explicitly noted that the act of travel, on its own, was sufficient to bring the defendant's subsequent failure to register within Congress's power to regulate. *Id.* at 331. As the Magistrate noted, the holding in *Vasquez* informs this court's constitutional review of § 2423(c) under the foreign commerce power. Because § 2423(c) is invoked when a person travels "in foreign commerce," the use of the channels and instrumentalities of foreign commerce is necessarily a part of the commission of the offense. Accordingly, the defendant was a person in foreign commerce when he traveled from the United States to Belize via the channels of foreign commerce. This fact alone is sufficient to bring the defendant's subsequent illicit sexual conduct within Congress's power to regulate under the Foreign Commerce Clause.

Flath, on the other hand, urges the court to adopt the conclusions of the *Vasquez* dissent, which described the majority's theory in its upholding of SORNA as a "significant expansion of congressional power." *Id.* at 333 (Manion, J., dissenting). The dissent noted that courts traditionally uphold Congress's power to regulate movement across state lines with an illicit purpose, not movement across state lines with an innocent purpose, followed at some later time by criminal conduct that is disconnected temporally from the travel. *Id.* The dissent emphatically states that "a person's mere travel across state lines does not give Congress the authority to later regulate all of his future conduct." *Id.* at 334. The dissent concluded that to be consistent with Supreme Court precedent, a necessary element of SORNA was a requirement that the defendant's travel be with an illicit intent to evade, elude, or avoid registering. *Id.* at 338.

While Flath's argument and the *Vasquez* dissent's reasoning are not without merit, the court is constrained to follow the *Vasquez* majority's holding, especially in light of Congress's broader power to regulate foreign commerce than interstate commerce and the absence of federalism and state sovereignty considerations. Indeed, the court is also persuaded by a recent decision of the Third Circuit, a case touching on the same issues this court faces here. In *United States v. Pendleton*, 658 F.3d 299 (3d Cir. 2011), the Third Circuit upheld the constitutionality of § 2423(c) as a valid exercise of Congress's foreign commerce power and addressed the intent and temporality arguments raised by Flath in this case. The Third Circuit also looked to SORNA for guidance, as that statute did not require intent to violate the statute at the time of travel nor a temporal restraint. *Id.* at 309-10. The Third Circuit found that much like SORNA's "failure to report"

provision "was intended to prevent convicted sex offenders from using the channels of interstate commerce in evading a state's reach," Congress enacted § 2423(c) to close "significant loopholes in the law that persons who travel to foreign countries seeking sex with children are currently using to their advantage in order to avoid prosecution." *Id.* (citing H.R. Rep. No. 107–525, at 3 (summarizing the purpose of adopting language similar to § 2423(c) in the Sex Tourism Prohibition Improvement Act)). Thus, the Third Circuit reasoned that because § 2423(c)'s jurisdictional element has an "express connection" to the channels of foreign commerce, it was a valid exercise of Congress's power under the Foreign Commerce Clause. *Id.* at 310. This court not only finds the Third Circuit's reasoning and holding persuasive, but it also finds the *Pendleton* decision consistent with the Seventh Circuit's holding in *Vasquez.* Accordingly, the court finds § 2423(c) is a proper regulation of persons in foreign commerce and of the uses of the channels of foreign commerce under Congress's foreign commerce power.[2]

Next, while the Magistrate found that in addition to the authority afforded Congress under the Foreign Commerce Clause, Congress also had separate and independent authority to enact § 2423(c) under the Necessary and Proper Clause of the Constitution to implement a treaty – here, the Optional Protocol to the United Nations Convention on the Rights of the

---

[2] Flath also objects to the Magistrate's finding that § 2423(c) regulates an activity that substantially affects foreign commerce. However, this objection appears to be an over-breadth challenge, rather than a direct objection to the magistrate's "substantially affecting foreign commerce" analysis. As the court has already considered whether the statute is over broad in responding to Flath's other objections, the court finds it unnecessary to revisit the Magistrate's findings regarding whether § 2423(c) regulates an activity that substantially affects foreign commerce. This is especially so, in light of the court's finding that § 2423(c) regulates the use of channels and persons in foreign commerce.

Child on the Sale of Children, Child Prostitution, and Child Pornography ("Optional Protocol"). S. Treaty Doc. No. 106-37, 2000 WL 3320196, 39 I.L.M. 1285 – this court finds it unnecessary to take this alternative step, though it finds no discernible fault with the Magistrate's recommendation in this regard. The statute was properly enacted under the Foreign Commerce Clause. That finding is sufficient for disposition of Flath's motion to dismiss. Accordingly, the court will not adopt the magistrate's recommendation inasmuch as it finds that § 2423(c) was properly enacted under the Necessary and Proper Clause of the Constitution to implement the Optional Protocol.

3.  Motion to Suppress

In his motion to suppress, Flath asks the court to suppress all items seized pursuant to two search warrants – a warrant issued by the Corozal Judicial District in Belize for Flath's residence in Copper Bank Village, Belize and a warrant issued by the United States District Court for the District of Columbia to search "electronic evidence" seized from Flath's residence in Belize. Flath claims that the procedure by which the Belizean warrant was obtained did not meet the standards of the Fourth Amendment, and that the procedure should be subject to the Fourth Amendment's requirements because the coordinated investigation between Belizean and American law enforcement officials amounted to a joint venture. As for the federal district court warrant, Flath argues that its fruits are tainted by the improperly issued Belizean warrant. Lastly, Flath contends that even if the requirements of the Fourth Amendment do not apply to a search performed in another country on an American citizen's home, the search was still unreasonable because Belize does not require that probable cause be established before a

search warrant is issued, and the warrant at issue here was signed by a police officer – not a neutral and detached magistrate.

    3.1    Background[3]

On June 14, 2010, the owner of a restaurant in the Copper Bank Inn in Copper Bank Village, Corozal, Belize, contacted the U.S. Embassy and stated that she had a video of an American molesting a minor child. The complainant advised U.S. Embassy officials that the manager of the Inn, while cleaning a room Flath had occupied, had discovered a USB thumb drive that contained images of child pornography, as well as a video of Flath sexually assaulting a 14 year old girl in Copper Bank Village. The Embassy officials forwarded this information to the United States State Department Diplomatic Security Service Regional Security Office ("RSO") and the RSO responded by sending a U.S. officer to meet the complainant and review the thumb drive. The U.S. officer confirmed the contents of the thumb drive and another U.S. officer was then sent to assist in the subsequent investigation. The U.S. officers began by meeting with a Belizean police officer and provided the Belizean officer with the thumb drive. The U.S. officers informed the Belizean officer that there was likely additional electronic evidence at Flath's residence and at the Inn. The U.S. officers also indicated that the evidence on the thumb drive showed violations of United States and Belizean law. The U.S. officers further expressed an interest in pursuing prosecution in the United States after the Belizean authorities completed their investigation and prosecution.

---

[3]These facts are undisputed and are taken from the Magistrate's recommendation.

Next, the U.S. officers accompanied Belizean officers to obtain the search warrant. The warrant was obtained from Police Superintendent Miguel Guzman ("Guzman"), as allowed by Belizean law. Before signing the search warrant, Guzman reviewed the contents of the thumb drive in the presence of the Belizean officer. After obtaining the warrant, the U.S. officials accompanied the Belizean officers to Flath's residence. Upon arrival at the residence, a majority of the Belizean officers approached Flath's front door and knocked, while the U.S. officers waited at the back door with a Belizean officer. Flath attempted to leave the residence from the back door and was stopped by the U.S. officers and the one Belizean officer at the back door. A U.S. officer secured Flath for officer safety until Flath reentered the residence.

A Belizean officer showed Flath the warrant and read it to him. The Belizean officers searched the residence, beginning on the ground floor and moving to the second floor. A U.S. officer followed the Belizean officers during the search, but did not participate. The Belizean officers directed the search, determined the areas to be searched and the items to be inspected and seized, and conducted the search. The Belizean officers replaced all items which they did not seize. Seized items were turned over to a Belizean officer who collected evidence and created an inventory. The search lasted approximately two hours. Flath was not handcuffed or restrained during the search. The evidence remained in the custody of the Belizean officers until the United States RSO requested and received permission to obtain copies of the evidence in July of 2010. The original evidence was returned to the Belizean authorities a few days later.

Additionally, while the search was occurring, a U.S. officer approached Flath, read him his *Miranda* rights – which Flath waived – and

began questioning Flath. Flath admitted to downloading images of child pornography and sexually touching a Belizean minor and signed a statement reflecting as much. When asked whether he was planning on sending the images to anyone else, Flath invoked his *Miranda* rights and requested an attorney. After the search of the residence, the U.S. officers accompanied Belizean officers to the Copper Bank Inn to a conduct a search there. The United States officers did not assist in the search of the Inn, though they were present at the Inn during the search. The Belizean police then arrested Flath.

### 3.2 Applicability of the Fourth Amendment

Generally, Fourth Amendment principles do not apply to searches by foreign authorities in their own countries, even if the targets of the search are American citizens. *United States v. Stokes*, 710 F.Supp.2d 689, 697 (N.D. Ill. 2009) (citing *United States v. Peterson,* 812 F.2d 486, 490 (9th Cir. 1987)). An exception occurs, however, when the participation of United States agents in the investigation is so substantial that the action is a joint venture between the United States and foreign officials. *Id.* (citing *United States v. Barona,* 56 F.3d 1087, 1091 (9th Cir. 1995)). In other words, the court must ask whether the level of involvement of the United States government agents was sufficient enough for them to be considered participants in the actions of the foreign police. *United States v. Marzano*, 537 F.2d 257, 270 (7th Cir. 1976). It is well-settled that providing information to foreign authorities does not transform a subsequent search by foreign officials into a joint venture. *Id.* at 270-71. Likewise, the mere presence of United States officials during a search is not sufficient to make the officials participants. *Id.*

In this case, the U.S. officials, though present at the search of Flath's residence and at the Inn, did not actively participate in the actual search of

defendant's property. Instead, Belizean officers obtained and executed the warrant. Even though the warrant was supported by information gathered and provided by the United States officials, that provision of information is clearly insufficient. Moreover, like the Magistrate, this court finds that the interrogation of Flath by a U.S. officer is quite distinct from the actual search of his residence and the Inn. Thus, the fact that the U.S. officer's interrogation could be categorized as substantial has no bearing on this court's inquiry into whether the U.S. officers' participation in the search was substantial. Accordingly, the court finds that the facts of this case do not support a finding that the United States officers' actions in the search were so substantial as to be considered participants in the search. In turn, the search of defendant's Belizean residence and the Inn does not implicate Fourth Amendment protections, and, therefore, the court will deny Flath's motion to suppress.

    3.3    The Warrant Requirement

Even assuming the Fourth Amendment applied to the search of Flath's residence, Flath would not be entitled to the full measure of the Fourth Amendment's protection as the Warrant Clause of the amendment — under which Flath's claims concerning probable cause and a neutral and detached magistrate are grounded – does not apply with equal force in foreign lands.

The Fourth Amendment contains two independent clauses. *United States v. Barona*, 56 F.3d at 1091 n.1. The first prohibits unreasonable searches and seizures, while the second – the Warrant Clause – describes the procedures that must be followed in obtaining a warrant. *Id.* The Warrant Clause provides that before a valid search may take place, law enforcement must obtain a warrant from a neutral and detached magistrate based on a

defendant's property. Instead, Belizean officers obtained and executed the warrant. Even though the warrant was supported by information gathered and provided by the United States officials, that provision of information is clearly insufficient. Moreover, like the Magistrate, this court finds that the interrogation of Flath by a U.S. officer is quite distinct from the actual search of his residence and the Inn. Thus, the fact that the U.S. officer's interrogation could be categorized as substantial has no bearing on this court's inquiry into whether the U.S. officers' participation in the search was substantial. Accordingly, the court finds that the facts of this case do not support a finding that the United States officers' actions in the search were so substantial as to be considered participants in the search. In turn, the search of defendant's Belizean residence and the Inn does not implicate Fourth Amendment protections, and, therefore, the court will deny Flath's motion to suppress.

    3.3    The Warrant Requirement

Even assuming the Fourth Amendment applied to the search of Flath's residence, Flath would not be entitled to the full measure of the Fourth Amendment's protection as the Warrant Clause of the amendment — under which Flath's claims concerning probable cause and a neutral and detached magistrate are grounded – does not apply with equal force in foreign lands.

The Fourth Amendment contains two independent clauses. *United States v. Barona*, 56 F.3d at 1091 n.1. The first prohibits unreasonable searches and seizures, while the second – the Warrant Clause – describes the procedures that must be followed in obtaining a warrant. *Id.* The Warrant Clause provides that before a valid search may take place, law enforcement must obtain a warrant from a neutral and detached magistrate based on a

showing of probable cause. *United States v. Robinson*, 546 F.3d 884, 887 (7th Cir. 2008). Flath argues that the Belizean warrant violated the Warrant Clause because it was not issued by a neutral and disinterested magistrate and it was not based on a finding of probable cause. Thus, the court must determine whether the Warrant Clause of the Fourth Amendment applies extraterritorially.

Although the Seventh Circuit has not addressed the issue, the Second Circuit and a district court in this circuit have both held that "the warrant requirement does not govern searches conducted abroad by U.S. agents; such searches of U.S. citizens need only satisfy the Fourth Amendment's requirement of reasonableness." *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 157, 167 (2nd Cir. 2008); *see United States v. Stokes*, 710 F.Supp.2d 689 (N.D. Ill. 2009). The Second Circuit noted that no authority existed suggesting that U.S. officials must obtain a warrant from foreign magistrates before conducting an overseas search. *In re Terrorist Bombings*, 552 F.3d at 169-70. The court also reasoned that "if U.S. judicial officers were to issue search warrants intended to have extraterritorial effect, such warrants would have dubious legal significance, if any, in a foreign nation." *Id.* at 171. This court finds the reasoning of the Second Circuit persuasive. Moreover, Flath has not offered any authority to suggest that the warrant requirement applies abroad. Accordingly, the court finds that the Warrant Clause does not apply to the Belizean warrant at issue. Thus, Flath's claims that the Belizean warrant did not comply with the Warrant Clause must fail.

    3.4    Reasonableness Requirement

Although this court has found that the warrant requirement does not apply extraterritorially, there is some authority – as noted above – to suggest

that the Fourth Amendment's reasonableness requirement applies abroad. *In re Terrorist Bombings*, 552 F.3d at 167; *Stokes*, 710 F.Supp.2d at 700. Reasonableness is measured in objective terms by examining the totality of the circumstances. To determine whether a search is reasonable, a court must balance the degree to which the search intrudes upon an individual's privacy and the degree to which it is necessary to promote legitimate government interests. *Samson v. California*, 547 U.S. 843, 848 (2006). The reasonableness inquiry requires courts to consider the scope of the intrusion, the manner in which it was conducted, the justification for initiating it, and the place in which it is conducted. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

      The Magistrate found that the search at issue here was reasonable. Based upon an independent review of the record and relevant Fourth Amendment authority, the court has arrived at the same conclusion. Like the Magistrate, this court finds the search was reasonable in manner and scope and justified at its initiation, as the Belizean authorities had a video of Flath allegedly molesting a minor; the search was conducted pursuant to a Belizean warrant which was read to Flath before it was executed; the search was conducted in the daytime and lasted approximately 2 hours; Flath was present during the search and was not handcuffed or restrained in any way; and the Belizean authorities seized only those items authorized by the search warrant.

      However, Flath argues that the search at issue was unreasonable because it was conducted under the authority of a search warrant that was not issued by a neutral and detached magistrate judge and because the search was not based upon a finding of probable cause. In other words, Flath contends that the Fourth Amendment's reasonableness requirement

encompasses the Warrant Clause's requirements of probable cause and a neutral and detached magistrate. While the court declines to expressly read the Warrant Clause requirements into the reasonableness requirement due to the already-highlighted difficulties of applying the Warrant Clause to overseas searches, the court finds no issue with generally considering both the individual who issued the warrant and the basis he had for doing so in its reasonableness analysis. Here, the court finds that although a Belizean police officer issued the warrant, he was authorized under Belizean law to do so. Thus, this is not a situation in which the individual issuing the warrant lacked the legal authority to do so. Moreover, there is no evidence to suggest that this police officer was anything but impartial. Additionally, the record reflects that the Belizean officials had probable cause for conducting the search. As noted by the Magistrate, "probable cause is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In this case, the issuing official was presented with the explicit images on the thumb drive – found in Flath's room at the Inn – and the warrant was based on the oath of a Belizean officer who had prior contact with Flath and could identify him. Based on these facts, a reasonably prudent police officer could conclude that a search of Flath's residence could uncover evidence of a crime. Accordingly, based on the totality of the circumstances, the court concludes that the search was reasonable under the Fourth Amendment. As such, the court will adopt the Magistrate's recommendation and will deny Flath's motion to suppress.

    Accordingly,

IT IS ORDERED that the September 14, 2011 recommendation of Magistrate Joseph (Docket #40) that the defendant's motion to dismiss the indictment (Docket #14) be denied be and the same is hereby ADOPTED insofar as it finds that § 2423(c) was properly enacted under the Foreign Commerce Clause of the Constitution;

IT IS FURTHER ORDERED that the defendant's motion to dismiss the indictment (Docket #14) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that the November 18, 2011 recommendation of Magistrate Joseph (Docket #51) that the defendant's motion to suppress (Docket #15) be denied be and the same is hereby ADOPTED;

IT IS FURTHER ORDERED that the defendant's motion to suppress (Docket #15) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that the September 14, 2011 recommendation of Magistrate Joseph (Docket #41) that the defendant's motion to dismiss for duplicity contained within the defendant's "Reply to Response" at Docket #25 be denied be and the same is hereby ADOPTED; and

IT IS FURTHER ORDERED that the defendant's motion to dismiss for duplicity contained within the defendant's "Reply to Response" at Docket #25 be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 13th day of January, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge